## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HUSQVARNA AB and HUSQVARNA ) 
PROFESSIONAL PRODUCTS, INC., )
)
Plaintiffs, )
)
v. ) Civil Action No. 15-856-SLR-SRF
)
THE TORO COMPANY, )
)
Defendant. )

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On September 22, 2015 plaintiffs, Husqvarna AB and Husqvarna Professional Products, Inc. (collectively "Husqvarna"), filed this patent infringement suit against the defendant, The Toro Company ("Toro"), alleging infringement of United States Patent No. 9,055,713 (the "'713 patent"). (D.I. 1) Presently before the court is Toro's motion to transfer venue to the District of Minnesota pursuant to 28 U.S.C. § 1404(a). (D.I. 26) For the following reasons, I recommend that the court DENY Toro's motion to transfer.

### II.    BACKGROUND

Husqvarna AB is a Swedish company organized and existing under the laws of Sweden. (D.I. 1 at ¶ 1). Husqvarna Professional Products, Inc. ("HPP") is a U.S. subsidiary of Husqvarna AB. (D.I. 41 at 3) Husqvarna asserts that HPP is the exclusive licensee of the patent-in-suit. (*Id.*) HPP is a Delaware corporation maintaining its principal place of business in Charlotte, North Carolina. (*Id.*) Husqvarna produces "outdoor power products," such as lawnmowers. (*Id.* at 2–3) It sells its products to retailers across the United States, including in Delaware. (*Id.* at 3) Husqvarna and Toro are direct competitors in the market. (*Id.*)

Toro is a Delaware corporation maintaining its principal place of business in Bloomington, Minnesota. (D.I. 27 at 5) Toro also sells products through retailers across the United States, including in Delaware. (D.I. 42 at ¶ 8) Toro's Minnesota headquarters houses its research, development, engineering, marketing, and sales functions. (D.I. 27 at 5) Additionally, Toro maintains that "all of the witnesses with information regarding Toro's accused products and prior art are within the subpoena power of the District of Minnesota." (*Id.* at 6)

Husqvarna alleges infringement of the '713 patent entitled, "All Wheel Drive, Walk Behind Mower." (D.I. 1 at ¶ 7) Husqvarna accuses two Toro all-wheel drive ("AWD") lawnmowers of infringing the '713 patent: Toro Recycler 22-inch Personal Pace All-Wheel Drive Mower (Model No. 20353), and Lawn Boy All-Wheel Drive Mower (Model Nos. 10739 and 17739). (D.I. 1 at ¶ 9; D.I. 43, Ex. L) Toro filed its answer and counterclaim to the complaint on November 13, 2015. (D.I. 9) Husqvarna filed its answer to Toro's counterclaim on December 7, 2015. (D.I. 12) Thereafter, on March 24, 2016, Toro filed the pending motion to transfer. (D.I. 26)[1]

## III. STANDARD OF REVIEW

Section 1404(a) of Title 28 of the United States Code grants district courts the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Much has been written about the legal standard for motions to transfer under 28 U.S.C. § 1404(a). *See, e.g.*, *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011); *Jumara v. State Farm*

---

[1] There is also a pending motion to stay in this action, which will be addressed separately. (D.I. 33)

2

*Ins. Co.*, 55 F.3d 873 (3d Cir. 1995); *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367 (D. Del. 2012).

Referring specifically to the analytical framework described in *Helicos*, the court starts with the premise that a defendant's state of incorporation has always been "a predictable, legitimate venue for bringing suit" and that "a plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses.'" 858 F. Supp. 2d at 371 (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)). Indeed, the Third Circuit in *Jumara* reminds the reader that "[t]he burden of establishing the need for transfer . . . rests with the movant" and that, "in ruling on defendants' motion, the plaintiff's choice of venue should not be lightly disturbed." 55 F.3d at 879 (citation omitted).

The Third Circuit goes on to recognize that:

> In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Id.* (citation omitted). The court then describes some of the "many variants of the private and public interests protected by the language of § 1404(a)." *Id.*

> The private interests have included: plaintiff's forum of preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of

3

the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citations omitted).

## IV.   ANALYSIS

With the above "jurisdictional guideposts" in mind, the court turns to the "difficult issue of federal comity" that transfer motions present. *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 976 (3d Cir. 1988). Husqvarna does not challenge that venue would also be proper in the District of Minnesota. (D.I. 41) As such, the court does not address this further.[2] *See* 28 U.S.C. § 1404(a).

### A.  The Private Factors

The private interests include: plaintiff's forum preference; the defendant's preference; where the claim arose; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses to the extent that witnesses may actually be unavailable for trial; and the location of books and records. *See Jumara*, 55 F.3d at 879.

#### 1.  Plaintiffs' forum preference

Husqvarna contends that as plaintiffs, their choice of forum is entitled to great weight. (D.I. 41 at 8–11) HPP "is a Delaware corporation that is choosing to rely on the law and Courts of Delaware for its business dealings." (*Id.*) Therefore, Husqvarna asserts that Delaware is a natural forum for it to pursue business litigation. (*Id.*)

Toro responds that this factor, along with incorporation in Delaware, is not dispositive of the transfer inquiry. (D.I. 27 at 10) Because the parties do not have a physical presence in

---

[2] The first step in the transfer analysis is to determine whether the movant has demonstrated that the action could have been brought in the proposed transferee venue in the first instance. *See Mallinckrodt, Inc. v. E-Z-Em, Inc.*, 670 F. Supp. 2d 349, 356 (D. Del. 2009). This issue is not disputed.

Delaware, Husqvarna's choice of forum is only entitled "to some degree of heightened deference." (*Id*. at 11)

Plaintiffs have historically been accorded the privilege of choosing their preferred venue for pursuing their claims. *See C. R. Bard, Inc. v. Angiodynamics, Inc*., Civ. No. 15-218-SLR, 2016 WL 153033, at *2–4 (D. Del. Jan. 12, 2016). "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'" *Shutte v. Armco Steel Corp*., 431 F.2d 22, 25 (3d Cir. 1970) (internal citation omitted); *see also Helicos Biosciences Corp. v. Illumina, Inc*., 858 F. Supp. 2d 367, 373 (D. Del. 2012) ("the court declines to disregard the privilege of choosing a venue that has historically been accorded plaintiffs, absent some specific authority making such a distinction"). However, courts have recognized that "when a plaintiff chooses to bring an action in a district where it is not physically located, its forum preference is entitled to something less than [] paramount consideration...." *Linex Techs., Inc. v. Hewlett-Packard Co*., Civil Action No. 11-400-GMS, 2013 WL 105323, at *3 (D. Del. Jan. 7, 2013).

In the present action, Husqvarna does not have facilities in Delaware. (D.I. 1 at ¶ 1; D.I. 28, Ex. 6) However, even where the chosen forum is not a "home forum," courts still give a plaintiff's preference "heightened" weight. *Linex*, 2013 WL 105323, at *3. Delaware is a legitimate forum, as HPP and Toro are incorporated in Delaware. *See FastVDO LLC v. Paramount Pictures Corp*., 947 F. Supp. 2d 460, 462 (D. Del. 2013).

Therefore, this factor weighs against transfer.

### 2. Defendant's forum preference

Toro contends that its preference for the District of Minnesota strongly favors transfer because its actions, headquarters, principal place of business, and witnesses are centered in

5

Minnesota. (D.I. 27 at 13) Toro's witnesses can also be compelled to testify in the District of Minnesota. (*Id.*)

Husqvarna concedes that Toro's choice should be given some weight in the analysis. (D.I. 41 at 11) However, Toro's preference should be weighted less than the plaintiffs'. (*Id.*) Additionally, Husqvarna asserts that Toro is a Delaware corporation conducting business in Delaware, so Delaware is an appropriate forum. (*Id.*)

Courts "decline[] to elevate [a defendant's] convenience over the choice of a neutral forum selected by [the defendant] as the situs of [its] incorporation." *Stephenson v. Game Show Network, LLC*, 933 F. Supp. 2d 674, 678 (D. Del. 2013) (citing *Cradle IP, LLC v. Texas Instruments, Inc.*, 923 F. Supp. 2d 696, 699–700 (D. Del. 2013)).

Although Toro would rather litigate in Minnesota, Toro is incorporated in Delaware and sells its products in various states, including Delaware. (D.I. 27 at 5; D.I. 42 at ¶ 8; D.I. 43, Exs. F, G) A party's state of incorporation is a traditional and legitimate venue, as is the locus of a party's business activities. *See C. R. Bard, Inc. v. Angiodynamics, Inc.*, Civ. No. 15-218-SLR, 2016 WL 153033, at *2–4 (D. Del. Jan. 12, 2016).

Therefore, this factor weighs only slightly in favor of transfer.

### 3. Where the claim arose

Toro asserts that the case should be transferred because the claim "arose out of activity centered in the District of Minnesota—not Delaware." (D.I. 27 at 13) Specifically, infringement is more properly focused in Minnesota because research and development, witnesses, vendors, and its headquarters are there. (*Id.* at 14) Husqvarna responds that the claim arose in Delaware because Toro sells its products in Delaware. (D.I. 41 at 11) Additionally, Husqvarna contends

that neither the issues nor evidence are centered in Minnesota, as Toro's lawnmowers are manufactured in Mexico, and relevant witnesses reside elsewhere. (*Id*. at 5–6, 11–12)

A claim for patent infringement arises wherever someone has committed acts of infringement, to wit, "makes, uses, offers to sell, or sells any patented invention" without authority. *See generally* 35 U.S.C. § 271(a); *Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998) (an infringement claim "arises out of instances of making, using, or selling the patented invention").

Because Toro has sold its products in Delaware, the asserted patent claims may be said to arise in Delaware. *See C. R. Bard, Inc. v. Angiodynamics, Inc.*, Civ. No. 15-218-SLR, 2016 WL 153033, at *2–4 (finding that a patent claim arose in Delaware when the defendant sold products there); (D.I. 42 at ¶ 8)

Therefore, this factor weighs against transfer.

### 4. Convenience of the parties

Toro believes transfer is warranted because even though both companies are very large, Husqvarna is twice the size. (D.I. 27 at 15) Husqvarna must travel regardless of the forum, so it makes sense to litigate in Minnesota where Toro's headquarters and witnesses are located. (*Id*.) In opposition, Husqvarna avers that because both companies are so large, the size difference is inconsequential. (D.I. 41 at 12) Furthermore, Toro has previously litigated "well over thirty" patent cases across the United States. (*Id*.) Therefore, there should be no impediments to litigating outside of Minnesota. (*Id*.)

In evaluating the convenience of the parties, a district court should focus on the parties' relative physical and financial condition. *See C. R. Bard*, 2016 WL 153033, at *3 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). When a party "accept[s] the benefits of

7

incorporation under the laws of the State of Delaware, 'a company should not be successful in arguing that litigation' in Delaware is 'inconvenient,' 'absent some showing of a unique or unexpected burden.'" *Scientific Telecomm., LLC v. Adtran, Inc.*, Civ. No. 15-647-SLR, 2016 WL 1650760, at \*1 (D. Del. Apr. 25, 2016) (quoting *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001)).

Toro is a large Delaware corporation with resources to litigate in this district, as it has done previously.[3] (D.I. 43, Ex. Z at 1, 7–10) Toro chose to incorporate in Delaware, where it would be subject to the jurisdiction of Delaware courts. *See Stephenson v. Game Show Network, LLC*, 933 F. Supp. 2d 674, 670 (D. Del. 2013) (denying a motion to transfer where the defendant was incorporated in Delaware and had the resources to litigate there); *Versata Software, Inc. v. Callidus Software Inc.*, 944 F. Supp. 2d 357, 361 (D. Del. 2013) (transfer not warranted where both parties had experience litigating in multiple jurisdictions).

Therefore, this factor weighs against transfer.

### 5. Convenience of the witnesses

Toro asserts that availability of trial witnesses is the most important factor in the transfer analysis. (D.I. 48 at 2) Accordingly, transfer is warranted because many non-party witnesses are unavailable to attend trial in Delaware. (D.I. 27 at 9) Specifically, Toro asserts that it has "provided detailed sworn testimony establishing that four witnesses having independent, first-hand knowledge of key evidence [of an early prototype] invalidating Plaintiffs' patent will not and cannot attend trial in Delaware, but can be compelled to attend trial in Minnesota." (D.I. 48 at 2) Those witnesses include Milton Rache, Mike Happe, Dave Moe, and Tip Sivilay. (*Id.*)

---

[3] As of March 17, 2016, Toro was a publicly traded company with 6,134 employees and \$1.7 billion in revenue. (D.I. 28, Ex. 13 at 1)

Husqvarna suggests that the prototype is not important to Toro's trial defenses because Toro did not identify the prototype in its identification of seven prior art references. (D.I. 41 at 15) Thus, Toro is over-emphasizing the significance of the prototype to support the present motion. (*Id.*) Regardless, Husqvarna asserts that Toro has not shown that the witnesses are necessary for trial, or that there are no additional witnesses who could supply the necessary testimony at trial in Delaware. (*Id.*)

For example, Mr. Rache stated that Chris Wadzinksi and others also have relevant knowledge of the lawnmowers at issue. (*Id.* at 15–16) However, Toro did not show that Mr. Wadzinksi or the "others" are unavailable for trial. (*Id.*) Husqvarna also questions Mr. Rache's credibility because Mr. Rache stated that the prototype was the precursor to Toro's commercial walk-behind mover, but the commercial mower was not released until eight years after Mr. Rache retired. (*Id.* at 16)

With respect to Mr. Happe, Husqvarna asserts that Toro has not shown that others do not have the same knowledge of sales, marketing, design, and function of the prototype model that Mr. Happe claims to have. (*Id.*)

Finally, Husqvarna objects to Mr. Moe's declaration as untimely because it was not filed until after Toro submitted its opening brief for this pending transfer motion. (*Id.*) Even if the court considers Mr. Moe's declaration, Mr. Moe states that he was a group manager. (*Id.* at 17) Husqvarna asserts that Toro has not shown that others within the "group" could not provide similar testimony. (*Id.*)

With respect to convenience of the witnesses, it is not whether witnesses are inconvenienced by litigation that matters, but rather, whether witnesses "may actually be

unavailable for trial in one of the fora." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

In the present action, there is no indication that the "key" witnesses are the only witnesses with knowledge of the accused products who could be called upon to testify. Mr. Rache identified Chris Wadzinksi as a designer with knowledge of the lawnmower prototype. (D.I. 31 at ¶ 6) Mr. Hurst identified multiple individuals with knowledge of the design, development, manufacturing, marketing, or sales of the accused products. (D.I. 30 at ¶¶ 5–15)

Additionally, Mr. Sivilay is a Toro employee. (D.I. 32 at ¶ 1) "[W]itnesses who are employed by a party carry no weight in the 'balance of convenience' analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial. *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998) (citation omitted). Moreover, Mr. Sivilay states that it would be "inconvenient" for him to travel to Delaware, but not that he would be unable to attend.[4]  (D.I. 32 at ¶ 8)

Mr. Hurst suggests, like Mr. Sivilay, that it would be inconvenient for the knowledgeable employees he has identified to travel to Delaware to attend trial.[5]  (D.I. 30 at ¶ 16) Mr. Rache, also states that he would "probably decline to travel to Delaware to testify because of the inconvenience...." (D.I. 31 at ¶ 9) That travel would be inconvenient does not demonstrate that all of these witnesses would "actually be unavailable for trial," as required by *Jumara*. 55 F.3d 873, 879 (3d Cir. 1995).[6]

---

[4] Mr. Sivilay stated that he has been working part time due to back problems, which have been improving with physical therapy. (D.I. 32 at ¶ 6) Because of this back pain, "[he] would prefer not to travel to Delaware to testify." (*Id.*)

[5] Mr. Hurst states that it would be inconvenient for all witnesses identified to be away from their work at Toro's headquarters to testify in Delaware. (D.I. 30 at ¶ 16)

[6] The convenience of the witnesses is only given weight "when there is some reason to believe that a witness actually will refuse to testify absent a subpoena." *Smart Audio Techs., LLC v.*

District Court Judge Robinson has found that:

> [I]n the nine patent jury trials this judicial officer conducted between March 2010 and October 2011, an average of three fact witnesses per party appeared live for trial, with the average length of trial being 28 hours (with the parties often using less time than allocated, on average, 25 hours). Further, depositions in the cases over which this judicial officer presides are generally taken where the deponents reside or work.

*C. R. Bard, Inc. v. Angiodynamics, Inc.*, Civ. No. 15-218-SLR, 2016 WL 153033, at *3 (D. Del.

Jan. 12, 2016). As in *C.R. Bard*, there is no suggestion that this case will be any exception.

Moreover, discovery can be conducted at any location convenient to the parties and their

employees, so the only event that must take place in Delaware is the trial.[7] The court has

previously found that:

> [T]ravel expenses and inconveniences incurred for that purpose, by a Delaware defendant, [are] not overly burdensome. From a practical standpoint, much of the testimony presented at trial these days is presented via recorded depositions, as opposed to witnesses traveling and appearing live. There certainly is no obstacle to [a party] embracing this routine trial practice.

*Oracle Corp. v. epicRealm Licensing, LP*, No. Civ. 06-414-SLR, 2007 WL 901543, at *4 (D.

Del. Mar. 26, 2007). As such, although some witnesses would choose not to travel, Toro has not

shown that witnesses with "key" knowledge could not attend trial in Delaware. Furthermore,

---

*Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012). In the present action, only Mr. Happe and Mr. Moe affirmatively state that they will refuse to testify at trial in Delaware. (D.I. 29 at ¶ 7; D.I. 36, Ex. 1 at ¶ 9) However, as discussed, Toro has not shown that Mr. Happe and Mr. Moe are the only witness with key knowledge of the accused products.

[7] According to national statistics, less than 13.9% of patent infringement cases resolve on the merits. *Scientific Telecomm., LLC v. Adtran*, Civ. No. 15-647-SLR, 2016 WL 1650760, at *1 n.2 (D. Del. Apr. 25, 2016) (citing Howard, Brian, *The Truth About Patent Damage Awards*, Law 360 (Oct. 16, 2014); Morgan, Paul, *Microsoft v. i4i – Is the Sky Really Falling?*, Patently O (Jan. 9, 2011) ("[M]ore than 97% of patent suits are settled before trial with no judicial validity test."); Denlow, Morton, Hon. Ret., *Magistrate Judges' Important Role in Settling Cases*, The Federal Lawyer, 101 (May/June 2014) ("In 2012, less than 2 percent of federal civil cases went to trial.")).

Toro has not shown that it could not use, or would suffer prejudice through use of video depositions at trial.

Therefore, this factor weighs slightly in support of transfer.

### 6. Location of the books and records

Toro argues that transfer is appropriate due to inconvenience in transporting physical evidence from Minnesota to the District of Delaware. (D.I. 27 at 17–18) In addition to books and records, Toro anticipates that lawnmowers themselves will be necessary evidence at trial. (*Id*.) Husqvarna responds that both companies "are sophisticated modern companies that maintain electronic business records and files, and they each have the ability to image and produce paper files electronically." (D.I. 41 at 18) With respect to lawnmowers, Husqvarna argues that shipping the two accused lawnmowers "is a modest expense for a patent case of this size, particularly because Toro regularly ships the accused products to Delaware to be sold in this state as part of its ordinary course of business." (*Id*.)

The Third Circuit in *Jumara* advised that the location of books and records is only determinative if "the files c[an]not be produced in the alternative forum." 55 F.3d at 879. However, the Federal Circuit recently explained that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Nevertheless, courts within the District of Delaware have repeatedly recognized that recent technological advances have reduced the weight of this factor. *See, e.g., Intellectual Ventures I LLC, v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 485 (D. Del. 2011); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 208 (D. Del. 1998); *Nihon Tsushin Kabushiki Kaisha v. Davidson*, 595 F. Supp. 2d 363, 372 (D.

Del. 2009). Today, "virtually all businesses maintain their books and records in electronic format readily available for review and use at any location." *C. R. Bard, Inc. v. Angiodynamics, Inc.*, Civ. No. 15-218-SLR, 2016 WL 153033, at *3 (D. Del. Jan. 12, 2016).

With respect to books and records, it is logical to conclude that Toro maintains readily accessible documents in electronic format, given that Toro's headquarters are in Minnesota, it maintains facilities across the globe, lawn care products are manufactured in Mexico, and it sells its products to nationwide distributors like Home Depot. (D.I. 43, Exs. F, M, N, O, P, X)

With respect to the physical lawnmowers and prototypes, Toro has not shown why it would be unable to transport the mowers, which are sold in Delaware, to trial in a Delaware court. *See C. R. Bard*, 2016 WL 153033, at *3. Toro states that it would be "much more convenient for [it] to take these mowers back and forth to court in the District of Minnesota than [in Delaware]." (D.I. 27 at 18) However, aside from the fact that it is a shorter distance from the District of Minnesota courthouse to Toro's headquarters, Toro does not present any logical reason why mowers cannot be transported from a storage facility in Delaware, given the fact that mowers are regularly shipped to Delaware for sale. (D.I. 43, Exs. F, P, X) Whether the equipment is physically stored in Minnesota or Delaware would seem to have no impact on the logistics of moving that equipment from a storage site to a courtroom in either district. Toro has not provided a record to establish a logistical issue of such significance that it tips the scales in favor of transfer. Accordingly, Toro fails to show why its physical evidence and books and records are incapable of being presented at trial in Delaware. *See C. R. Bard*, 2016 WL 153033, at *3.

Therefore, this factor is neutral.

## B. The Public Factors

The public interests include: the enforceability of the judgment; practical considerations; administrative difficulty; the local interest in deciding local controversies at home; public policy; and the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

### 1. Enforceability of the judgment, administrative difficulty, and public policy

The parties concede that these factors are neutral. (D.I. 27 at 18 n.9; D.I. 41 at 20)

### 2. Practical considerations

Toro asserts that it is more convenient, efficient, and expedient to litigate in Minnesota because a separate and related patent infringement action between the parties was transferred there from North Carolina. (D.I. 27 at 2–4, 18–19) Furthermore, it contends that the District of Minnesota has developed specialized patent procedures to ensure predictability and efficiency. (*Id.* at 18) However, Husqvarna highlights Delaware's "deep experience and competence" in handling patent cases. (D.I. 41 at 19)

Although litigating patent infringement actions in both Delaware and Minnesota would present some overlap, the Minnesota case was stayed on August 31, 2015. (D.I. 28, Ex. 5) Additionally, the patents-at-issue in each case are different, and they involve different accused products.[8] *See C. R. Bard*, 2016 WL 153033, at *4 (finding that such evidence weighed against

---

[8] The Minnesota case involves patent numbers 7,071,436 and 7,866,134, entitled "Starter" and "Positive Grass Collector Attachment Positioning," respectively. (D.I. 28, Ex. 5 at ¶¶ 7–8) The Minnesota case accuses the Toro Recycler 22-inch Personal Pace Electric Start Mower (Model No. 20334) and Recycler 22-inch Variable Speed High Wheel Mower (Model No. 20371). (*Id.*, Ex. 5 at ¶ 10) The current action involves patent number 9,055,713, entitled "All Wheel Drive, Walk Behind Mower." (D.I. 1 at ¶ 7) The present action accuses the Toro Recycler 22-inch

transfer); (D.I. 41 at 19–20; D.I. 43, Exs. T, U, W) Moreover, the U.S. District Court for the District of Delaware is one of the most experienced in handling patent litigation. *See* Brian C. Howard J.D., M.A. & Jason Maples, J.D., LL.M., Lex Machina, LEX MACHINA PATENT LITIGATION YEAR IN REVIEW 2015 (2016). This Court is historically home to the second highest number of patent filings out of any district in the country. *Id.* at 5–6. In 2015, judges from this district issued the most merits decisions compared to any other district in the country. *Id.* at ii.

Therefore, this factor weighs against transfer.

### 3. Local interests

Toro asserts that Minnesota is the preferred forum because it "is the center of gravity of the accused activity," and the effects of the case will be felt most by Toro's employees located in Minnesota. (D.I. 27 at 13–14; D.I. 48 at 9–10) Husqvarna responds that this factor is generally not dispositive whereas, here, the alleged infringement occurs in multiple states. (D.I. 41 at 19)

"Local interest in deciding local controversies is not a dispositive factor, as patent litigation does not constitute a local controversy in most cases." *See C. R. Bard*, 2016 WL 153033, at *4. Indeed, the claims may be said to arise in Delaware, among other states, and Toro maintains facilities globally. *See* § IV(A)(3), *supra*. Additionally, "patent litigation implicates constitutionally protected property rights, is governed by federal law reviewed by a court of appeals of national (as opposed to regional) stature, and affects national (if not global) markets." *C. R. Bard*, 2016 WL 153033, at *4 (citing *Cradle IP v. Texas Instruments, Inc.*, 923 F. Supp. 2d 696, 700–01 (D. Del. 2013)).

Therefore, this factor is neutral.

---

Personal Pace All-Wheel Drive Mower (Model No. 20353) and Lawn Boy All-Wheel Drive Mower (Model Nos. 10739 and 17739). (D.I. 43, Ex. L)

## C. Transfer Analysis Summary

Toro has not shown that the *Jumara* factors as a whole weigh in favor of transfer. Only Toro's forum preference for its "home district" and the limitations of some Toro witnesses to appear in person for trial weigh in favor of transfer. These factors do not, on the whole, warrant transfer to another district. The greater number of remaining factors weigh against transfer, or are neutral.

"Defendant has the burden of persuading the court that transfer is appropriate, not only for its convenience but in the interests of justice." *C. R. Bard*, 2016 WL 153033, at *4. In the present action, Husqvarna chose a legitimate forum, Toro's state of incorporation. *See id.* "Although Delaware is not the locus of any party's business activities, it is a neutral forum, and the action does not implicate the laws of another state. *Id.*; *see also Hologic, Inc. v. Minerva Surgical, Inc.*, Civ. No. 15-1031-SLR, 2016 WL 789349, at *2 (D. Del. Feb. 29, 2016) (the court did not elevate the convenience of one party over another where the action involved Delaware corporations and did not implicate the state laws of another jurisdiction.).

The court recognizes that it may be more expensive and inconvenient for Toro to litigate in Delaware than in Minnesota. However, under the circumstances the court "decline[s] to elevate the convenience of one party over the other," as "discovery is a local event and trial is a limited event." *C. R. Bard*, 2016 WL 153033 at *4 n.6 (noting that "[d]iscovery is largely electronic, with depositions taking place where the deponents reside or work. Moreover, most trials now are scheduled for less than seven days, and involve only a handful of live witnesses and a limited number of documents."); *Scientific Telecomm., LLC v. Adtran, Inc.*, Civ. No. 15-647-SLR, 2016 WL 1650760, at *2 (D. Del. Apr. 25, 2016). Delaware imposes no "unique or unexpected burden" on Toro, such that transfer is warranted in the interests of justice. *Scientific*

16

*Telecomm*, 2016 WL 1650760, at *2 (explaining that when incorporated in Delaware, a party cannot successfully argue that Delaware is an inconvenient forum "absent some showing of a unique or unexpected burden."). Therefore, Toro's motion to transfer venue should be DENIED.

## V.    CONCLUSION

For the foregoing reasons, I recommend that the court DENY Toro's motion to transfer venue.  (D.I. 26)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objections and responses to the objections are limited to ten (10) pages each.  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: August 11 , 2016

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE