IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HUSQVARNA AB and HUSQVARNA PROFESSIONAL PRODUCTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE TORO COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) Civ. No. 15-856-SLR ) ) ) ) |

**MEMORANDUM ORDER**

At Wilmington this 20th day of September, 2016, having reviewed defendant's motion to stay and the papers filed in connection therewith;

IT IS ORDERED that said motion (D.I. 33) is granted, for the reasons that follow:

1. **Background.** In 2012, plaintiff Husqvarna AB ("HAB") filed patent application no. 14/377,736 directed to all-wheel drive, walk-behind mowers; the pending claims all required a single drive belt. (D.I. 35, ex. 4) In 2013, Husqvarna Consumer Outdoor Products N.A., Inc. filed an international patent application, PCT/US2012/024853, directed at an all-wheel drive walk-behind lawn mower that included embodiments with a single drive belt and two drive belts. (D.I. 40, ex. C) In 2014, defendant The Toro Company launched its dual-belt mowers. On January 15, 2015, HAB filed a request for a prioritized examination, followed on January 30, 2015 with patent application no. 14/609,780, which issued on June 16, 2015 as U.S. Patent No. 9,055,713 (the '713 patent"), the patent-in-suit. (D.I. 1, ex. 1; D.I. 35, ex. 5) Plaintiffs filed the instant

lawsuit on September 22, 2015, alleging infringement of the '713 patent by defendant's dual-belt mowers. Defendant filed its request for *ex parte* reexamination on December 17, 2015, and its motion to stay on March 24, 2016. On May 19, 2016, the U. S. Patent and Trademark Office (the "PTO") issued an office action in the reexamination rejecting all claims of the '713 patent as invalid. The scheduling order issued at bar indicates that claim construction is being briefed, with the court's decision to issue on or before January 5, 2017. Fact discovery closes December 31, 2016, with trial to commence January 16, 2018. (D.I. 16)

2. **Standard of review.** As recognized by the Supreme Court of the United States, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 252 (1936). Put another way, the decision of whether to grant a stay rests within the sound discretion of the court through the exercise of judgment, "weigh[ing] competing interests and maintain[ing] an even balance." *Id. See also Cost Bros. Inc. v. Travelers Indemnity Co.*, 760 F.2d 58, 60 (3d Cir. 1985); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). Since the enunciation of the standard by the Supreme Court in 1936, courts have identified several factors which may be used as guidance in determining whether a stay is appropriate: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party, i.e., the balance of harms; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay will promote judicial economy, e.g., how close to trial has the

litigation advanced. *See, e.g., Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 737-38 (3d Cir. 1983).

3. **Analysis.** With respect to the first factor, the parties are competitors that have aggressively pursued their respective legal options to further their respective business interests. Plaintiffs expedited review of the '713 patent, and filed suit against defendant shortly after its issuance.[1] Defendant promptly filed its request for reexamination as (at least) a redundant review of the '713 patent, and filed its motion to stay seeking to have the reexamination be the first (vis a vis the litigation) substantive review of the '713 patent. Under the circumstances of this case, the parties are disadvantaged to an equal degree in the market place and in terms of their legal dispute.

4. The second factor, simplifying the issues for trial, is also a draw. The court recognizes the benefits of a stay, that is, the possibility that the PTO will determine validity or otherwise will clarify issues like claim construction. The reexamination process may also encourage settlement between the parties to the litigation. However, the issues in the litigation are broader than those presented in the reexamination and it is possible that at least some claims of the '713 will survive the PTO's scrutiny, as originally written or as modified, thus leaving the court with virtually the same issues as joined in the pleadings and a long delay in the resolution of the parties' business

---

[1] Defendant intimates that the dual-belt mower is its innovation sold to the public in 2014, and that plaintiffs expedited prosecution of the '713 patent in 2015 in order to compete against defendant. It certainly is plausible to believe that plaintiffs, who claimed a two drive belt design in their 2013 international patent application, expedited their domestic business strategy based upon defendant's market entry.

3

dispute.

5. The final factor, promoting judicial economy, weighs slightly in favor of a stay under the circumstances of this case. Both the litigation and the reexamination are in their early stages. The court has not yet directed its scarce resources to the merits of this dispute, while the PTO has invalidated all claims of the '713 patent based not only on the teachings of the single reference substantively addressed by the '713 examiner during prosecution (WO 2009/000344 A1 to Rivolta),[2] but on a number of other prior art references. Given the comparable status of the parties and of the proceedings, the court concludes that it should be the PTO, not the court, that conducts this essentially first substantive review of the validity of the '713 patent.

                                                                                                       */s/*
                                                          United States District Judge

---

[2] Which, according to the PTO, has been presented in a new light in the reexamination. (D.I. 51, ex. A at 6)